STATE *ex rel.* JOHN K. CHEYNEY, *Relator*, v. R. H. SAMMONS, JUSTICE OF THE PEACE, *Respondent*.

1. Chapter 6247, Acts of 1911, provides for the establishment of Pinellas County upon the contingency of the casting of a stated affirmative vote in an election provided for within the territory designated, and also for the organization of the government of said county by the executive department as required by the statute.

2. Pinellas County being formed from a part of the territory of Hillsborough County, the officers of Hillsborough County are required to perform their respective duties until the organization of the new county government is effected by the appointment and qualification of the officers of the new county, having jurisdiction over the entire county.

3. As the constitution does not require amendments of pending bills to be referred to in the journals, an Act as Approved by the Governor must be taken as the legislative act in the absence of an affirmative showing by the journals that a materially different act was in fact passed by the legislature.

4.  Defects in the description of territory included in a new county do not render the statute creating the county unconstitutional.

5.  A statute establishing a new county is not void because of alleged defects in the description of the territory to be included in the new county, unless the description is so defective that the legislative intent cannot be effectuated in its essential features.

6.  By requiring the county line of Pinellas County to run from the north "to the shore of Old Tampa Bay, thence in a southerly direction *through the waters* of Old Tampa and Tampa Bay to a point in Tampa Bay due east from the north shore of Mullet Key," the intent was that the line shall run in a southerly direction through the middle of Old Tampa and Tampa Bay to the given point in Tampa Bay.

7.  The legislature may enact a law complete in itself to take effect by its own terms upon the happening of the contingency of a stated affirmative vote at an election therein provided for.

8.  In establishing a new county, it is the duty of the legislature to designate a county seat; and such designation is under the provisions of the constitution merely a temporary establishment of the county seat.

9.  In a statute establishing a new county, the duties of officers that are incidental to such establishment may be regulated in the act.

This case was decided by Division A.

This is a case of original jurisdiction.

### STATEMENT.

The constitution in sections 3 and 4 of Article VIII, provides that "The legislature shall have power to estab-

lish new counties, and to change county lines." "The legislature shall have no power to remove the county seat of any county, but shall provide by general law for such removal; Provided, That in the formation of new coun ties the county seat may be temporarily established by law."

A statute was enacted to establish a new county to be called Pinellas as follows:

"Chapter 6247—(No. 128).

An Act, Providing for the Creation of Pinellas County, in the State of Florida, and for the Organization and Government Thereof.

*Be it enacted by the Legislature of the State of Florida*:

Section 1. That the County of Pinellas be, and the same is hereby created and established. Such county shall comprise and include all that territory of the county of Hillsborough as heretofore existing, described as follows: Commencing on the Gulf of Mexico at the line 'dividing townships twenty-six (26) and twenty-seven (27)' south, thence running east along said line to the northeast corner of section one '(1) in township twenty-seven (27) south, range sixteen (16) east, thence south to the shore of Old Tampa Bay, thence in a southerly direction through the waters of Old Tampa and Tampa Bay, to a point in Tampa Bay due east of the north shore of Mullet Key, thence from said point in Tampa Bay, due west to the Gulf of Mexico thence northward along the coast to the point of beginning.

Sec. 2. That said county shall be a part of the First Congressional District, a part of the Eleventh Senatorial

20—Vol. 62

District, and a part of the Sixth Judicial Circuit, and said county shall have one member in the House of Repre sentatives of the State of Florida.

Sec. 3.   The Town of Clearwater shall be the County Seat of said county.

Sec. 4.   The Governor of the State shall, on or before the 15th, day of December 1911, appoint all of the officers to which said county may be entitled under the Constitu- tution and Laws of the State of Florida.

Sec. 5.   It shall be the duty of the Board of County Commissioners to hold their first meeting on the first Tuesday in January 1912, and at said meeting they shall make arrangements for temporarily carrying on the County Government.

Sec. 6.   It shall be the duty of the Board of Public Instruction of Pinellas County to hold their first meet- ing on the first Tuesday in January 1912.

Sec. 7.   The courts of Pinellas County shall have civil and criminal jurisdiction throughout said county over causes of action which shall have accrued, and over crimes and misdemeanors which shall have been committed within the territory embraced in said county, as hereby constituted, prior to the first day of January 1912, in the same manner and to the same extent as if said county had been in existence when such causes of action accrued or such crimes or misdemeanors were committed.

Sec. 8.   All actions and prosecutions and all proceed- ings in guardianship or administration, and any and all other actions, prosecutions or proceedings that may be pending in Hillsborough County, in the Circuit Court or County Court, or any other court, or before any officer or board of Pinellas County would have had exclusive jurisdiction if said county had been in existence, when such action or proceeding was instituted, shall be trans-

ferred to the corresponding court officer or board of Pinellas Conuty having jurisdiction of such matters; and all pleadings, papers, and documents in any way pertaining to any such action, prosecution or proceeding shall be delivered by the Clerk, or other officer of Hillsborough County having custody thereof, to the proper officer of Pinellas County.

Sec. 9. The Clerk of the Circuit Court of Pinellas County or his authorized agent, or deputy, shall procure from the records in the office of the Clerk of the Circuit Court of Hillsborough County, a transcript of all such deeds, transfers, mortgages or other conveyances of real or personal estates, and of all judgments, orders, decrees and wills, and any and all papers or documents in the custody of the Clerk of the Circuit Court of Hillsborough County that may in any wise effect the interests of the citizens of Pinellas County as the County Commissioners may, from time to time, direct and the Clerk of the Circuit Court of Hillsborough County shall, without charge or fees allow to the Clerk of the Circuit Court of Pinellas County free access to all books and papers on file in his office that would in any wise facilitate the procuring of such transcriptions. The Clerk of the Circuit Court of Pinellas County shall certify to the correctness of such transcription and thereupon such certified copies of the record, documents and other matters so transcribed and certified shall be of the same force and effect as the original records.

Sec. 10. As compensation for the service required of him in Section 9 of this Act, the Clerk of the Circuit Court of Pinellas County shall be paid by said county the sum of one hundred and fifty dollars per month for such time as he shall be actually engaged in such work.

Sec. 11. The Assessor of Taxes for Hillsborough

County shall continue to perform the duties of his office in relation to all property and persons within the territory of Pinellas County as hereby created, until the first day of January 1912. Upon the completion of his assessment roll as provided by law he shall deliver to the Assessor of Taxes for Pinellas County a transcript of so much of said assessment roll as applies to the property and persons within the limits of Pinellas County as hereby created, and thereafter the Assessor of Taxes for Pinellas County shall perform all the duties of his office as now provided by law.

Sec. 12. The Assessor of Taxes for Hillsborough County shall be paid as provided by law for assessing the taxes of Pinellas County for the year 1911, and the County Commissioners of said county shall provide for reasonable compensation to be paid to said assessor for preparing a transcript of his assessment roll as herein provided, and for any and all other extraordinary services which said assessor may be required to perform and the County of Hillsborough shall not be required to pay for any services performed by said assessor during the year 1911 in relation to property and persons embraced in the territory of Pinellas County as hereby created.

Sec. 13. The Assessor of Taxes for Pinellas County shall receive no compensation for the assessment of taxes of said county for the year 1911, but he shall receive for such services as he may perform after the first day of January 1912, such reasonable compensation as may be agreed on by the County Commissioners.

Sec. 14. The Collector of Taxes of Hillsborough County shall be allowed or credited in his settlement for the amount of all the taxes due on property or from persons within said county of Pinellas as hereby created for the (year) 1911.

Sec. 15. The Collector of Taxes of Hillsborough County shall proceed to collect the taxes which shall, on the first day of October, 1911, be unpaid and past due on the lands lying in the territory of Pinellas County as hereby created, and to enforce the payment thereof by sale of delinquent lands in the manner and with the same effect as if the County of Pinellas had not been created. And all sales made in pursuance of the provisions of this section shall be as valid as if the territory of Pinellas County had remained a part of Hillsborough County.

Sec. 16. All tax certificates covering lands lying in Pinellas County which shall, on the first day of January 1912, thereafter be owned by or issued to the State, shall be delivered to the Clerk of the Circuit Court of Pinellas County, and all redemptions of lands heretofore or hereafter certified or sold for taxes, whether certified or sold to the State or to individuals shall be made through the Clerk of the Circuit (court) of said county.

Sec. 17. It shall be the duty of the Board of County Commissioners of Pinellas County, at as early a date as may be possible to hold a conference with the Board of County Commissioners of Hillsborough County and agree with said board upon a plan or plans for the assumption by Pinellas County of its pro rata share of the indebtedness of Hillsborough County in accordance with the provisions of the Constitution of the State of Florida; and also upon an equitable division of the surplus funds that Hillsborough County may have had on hand or that may be owing to Hillsborough County on the first day of January 1912.

Sec. 18. It shall be the duty of the Board of Public Instruction of Pinellas County, at as early a date as may be possible, to hold a conference with the Board of Public Instruction of Hillsborough County and agree with such

Board upon a plan for the assumption by Pinellas County of its pro rata share of the indebtedness of the Board of Public Instruction of Hillsborough County, ad also upon an equitable division of the surplus funds that said board may have on hand or that may be owing to said board on the first day of January, 1912.

Sec. 19.   The Spring Term of the Circuit Court of Pinel las County shall be held on the second Tuesday in February and the fall Term of the Circuit Court of said county shall be held on the second Tuesday in September in each year.

Sec. 20.   The foregoing sections of this Act shall take effect upon their ratification by the affirmative vote of three-fifths of the votes cast at an election to be held in the territory hereinbefore set forth as the county of Pinellas.

Sec. 21.   The election provided for in Section 20 of this Act shall be held on the Second Tuesday of November A. D. 1911.   The County Commissioners and the Supervisor of Registration of Hillsborough County shall discharge such duties in connection with the calling and holding of said election as are now required of them by law for general elections, and the said election shall be governed in all respects by the law for holding general elections, except as otherwise provided herein, or not inconsistent herewith.   No notice of said election shall be necessary. Those who are duly qualified to vote within the territorial limits of said proposed County of Pinellas shall be qualified electors at said election.

Approved May 23, 1911."

A justice of the peace in the territory covered by the new county declined to issue a writ of summons in an action sought to be instituted in his court upon the

ground that after the above quoted statute became effective he doubted his authority to issue process. An alternative writ issued from this court to compel the issuance of the process.

*James F. Glen, Geo. P. Raney* and *Thomas Palmer,* for Relator;

*H. S. Phillips,* for Respondent.

WHITFIELD, C. J., *(after stating the facts.)*—The title of the act indicates a purpose to provide for the creation of a new county and also for the organization and government thereof. The statute is complete in itself and it is expressly provided that the first nineteen sections thereof shall take effect upon the contingency of an affirmative vote of three-fourths of the votes cast at an election to be held under the last two sections of the act in the territory set forth in the act as the County of Pinellas.

When the requisite vote was cast it afforded the contingency upon which the act by its terms became effective. Upon thus taking effect the County of Pinellas was thereby established. The organization and government of the county depended upon the operation of the sections of the act designed for that purpose. Such organization and government are political matters to be made effective by the executive department in the manner and by the means prescribed in the act. In providing that the act shall become effective upon the casting of the requisite vote and that the Governor shall on or before December 15th, 1911, appoint all the officers to which said county may be entitled under the constitution and laws of the State, the clear legislative intent is that the county shall be established upon the happening of the contingency of the

affirmative vote stated, and that within the time stated in the act the organization and government of the county shall be effected upon executive appointment and qualification of the chief administrative officers having jurisdiction over the entire territory embraced in the new county. If for any reason justices of the peace and constables are not appointed when the general administrative officers of the county are appointed and the organization and government of the county thereby accomplished, such organization is not thereby affected. Even though there is no express provision to that effect, it clearly was the legislative intent to avoid a hiatus in the government by impliedly requiring the officers of the old county to perform their respective duties at least until the organization of the county government is effected by the appointment and qualification of the general officers of the new county. The justice of the peace should issue proper process in his former jurisdiction, at least in the absence of a showing that the county government has been established as contemplated by the act, the time limited for such organization not having expired. No serious inconvenience can result from the temporary lack of a justice of the peace in the county after a county judge for the county is in commission and the government of the county is in operation, since the county judge has the jurisdiction of a justice of the peace for the entire county.

This conclusion would of itself require the writ to be made peremptory and dispose of the case, but counsel request that in the interest of the public welfare, the constitutional questions raised by the pleadings be determined.

The contention that Section 1 of the act is not the section that was passed by the legislature as the journals

show an amendment that is different from the section as it appears in the statute.

As the constitution does not require amendments of pending bills to be referred to in the journals, the Act as Approved by the Governor must be taken as the legislative act in the absence of an affirmative showing by the journals that a materially different act was in fact passed by the legislature. Here the journals do not affirmatively show that the bill when pending was not amended after the amendment above referred to and such an amendment may reasonably be assumed since the first amendment as adopted is apparently defective and needed amendment. West v. State, 50 Fla. 154, 39 South. Rep. 412; Goff v. Rickerson, 61 Fla. 29, 54 South. Rep. 264.

It is also contended that the description of the territory to be included in the new county is so indefinite as to render the act void, since the southern boundary is described as follows: "thence south to the shore of Old Tampa Bay, thence in a southerly direction through the waters of Old Tampa and Tampa Bay, to a point in Tampa Bay due east of the North Shore of Mullet Key." A defect in the description of the territory included in the new county does not render the act unconstitutional or invalid. The act is not void unless the legislative intent cannot be effectuated, because the description is so defective as not to include substantially all of the intended territory, or because the defective description will include or exclude territory not intended, so as to make it appear that the act would not have been passed if the defective description had been known, or because it is so entirely defective as to be unintelligible or to render the act unenforceable in its essential features. The description contained in the act requires the line to run from the north "to the shore of Old Tampa Bay, thence in a southerly

direction *through the waters* of Old Tampa and Tampa
Bay to a point in Tampa Bay due east from the north
shore of Mullet Key." It is clear the legislature intended
the boundary line from the point where it reaches, from
from the north, the shore of Old Tampa Bay, to run in a
southerly direction through the middle of the waters of
Old Tampa and Tampa Bay "to a point in Tampa Bay due
east of the north shore of Mullet Key." Such a line
through the waters would run in a general southerly
direction and would make the territorial limits of the
two counties in a natural way and define with reasonable
accuracy the jurisdiction over public and private rights in
the waters. If an unequal division of the waters had
been intended it would have been expressly defined. As
thus construed, the description of the boundaries of the
new county is sufficiently definite and certain.

It is competent for the legislature to enact a law com-
plete in itself to take effect of its own force upon the
happening of a contingency. Cotton v. County Commis-
sioners of Leon County, 6 Fla. 610; State v. Atlantic
Coast Line R. Co. 56 Fla. 617, 47 South. Rep. 969, and
cases cited.

The purpose of the provision of this act that it shall
take effect upon the casting the a designated affirmative
vote provided for in the act, is to make the act complete
in itself effective upon the happening of the stated con-
tingency. This contingency is the affirmative vote of the
electors in the territory to be affected, and there can be
no valid objection to such selection by the law as the
matter upon which its complete terms is to operate.

The provision in the act for a county seat is subject to
the constitutional provision that such establishment is
only temporary or until a county seat is duly established
under the law. It was the duty of the legislature to

designate a county seat for immediate purposes, and the political effect of the selection made cannot be considered by the court.

Section 7 of the act is not an *ex post facto* law. The provisions of this and other sections of the act are incident to authority and duty undoubtedly vested in the law-making power. Kroegel v. White, decided this term. Any imperfections that may be in the statute do not affect the constitutionality of the act in establishing the county and its government.

A peremptory writ will issue in the absence of a showing that a county government has been established in Pinellas County under the authority of the political department of the State government, the time limited for such organization not having expired.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.