THE STATE OF FLORIDA, *Appellant,* v. THE COUNTY OF BREVARD, a Municipal Corporation under the Laws of the State of Florida, by and through GEO. G. BROCKETT, Chairman, JOHN B. RODES, A. FORTENBERRY, C. R. COPELAND and A. W. DONALDSON, Constituting the Board of County Commissioners of Brevard County, Florida, *Appellees.*

En Banc.

Opinion filed February 1, 1930.

228

C. A. *Boyer*, Special State Attorney, for Appellant;

*Smith, Crofton & Wilson,* for Appellees.

WHITFIELD, J.—This appeal is from a decree validating bonds to be issued by Brevard County under Chapter 13937, Acts of 1929, which is as follows:

"AN ACT to Provide a Unified System of County Hard-surfaced Highways and Bridges in Brevard County, Florida; to Declare Certain Roads and Bridges a County Purpose; to Authorize the Board of County Commissioners of Said County to Issue Five Per Cent (5%) Bonds of Said County for the Purpose of Refunding, Retiring and Paying All Outstanding Bonds, Time Warrants and Other Indebtedness Against Any and All

Special Road and Bridge Districts of Said County, or to Exchange Such County Bonds for said District Bonds, or to Retire Said District Bonds with County Taxes and to Abolish such Districts and to Deliver the Assets of Said District to Said County.

*"Be It Enacted by the Legislature of the State of Florida*:

"Section 1. All roads and bridges heretofore opened, built or constructed, in whole or in part, by any and all special road and bridge districts of Brevard County, Florida, are hereby declared and determined to have been a county purpose under the Constitution and Laws of Florida at the time said roads and bridges were opened, built or constructed and that the paying therefor is a county purpose.

"Section 2. The Board of County Commissioners of Brevard County, Florida, are hereby authorized to issue bonds of said county in the aggregate sum of not exceeding $1,200,000.00 to be designated county road and bridge bonds, such bonds to draw interest at the rate of 5% per annum payable semi-annually and maturing serially, one-twentieth thereof to mature five years after date thereof and an additional one-twentieth to mature each year thereafter to and including the twenty-fifth year after the date thereof, said bonds to be for the purpose hereinafter designated.

"Section 3. That said bonds provided for in Section 2 of this Act, or the proceeds thereof, shall be used for the purpose of redeeming, paying, settling and cancelling and all bonds and time warrants of all special road and bridge districts of Brevard County, Florida, being bonds and time warrants now issued and outstanding.

"Section 4. That the Board of County Commissioners of Brevard County, Florida, be and they are hereby authorized, upon the issuance of such county road and bridge bonds, as provided for in Sections 2 and 3 of this Act, to exchange in equal amounts such county road and bridge bonds for outstanding bonds and/or time warrants of the special road and bridge districts of said county mentioned in Section 3 of this Act, in all cases where the holders thereof are agreeable thereto, such exchange to be on the basis of par and accrued interest of new bonds for par and accrued interest of old bonds and time warrants, and in all cases where such exchange is effected the old bonds or time warrants so redeemed shall thereupon be cancelled by said board. Any difference in amount of accrued interest may be settled by payment of cash, in the discretion of said board.

"Section 5. If the holders of outstanding special road and bridge district bonds and time warrants mentioned in Section 3 of this Act, are unwilling to exchange bonds for bonds or time warrants for bonds as provided for in Section 4 of this Act, but are willing to accept the reasonable market value of such outstanding special road and bridge district bonds and time warrants not exceeding 95% of par, then said Board is hereby authorized to sell so much of said road and bridge bonds provided for in Section 2 of this Act, at not less than 5% below par, as a means of making cash redemption of such bonds and time warrants of such special road and bridge districts, rather than by exchange as provided in Section 4 of this Act.

"Section 6. That upon the redemption or paying off of existing bonds and time warrants of any special road and bridge district in said county, now outstanding, either

by exchange or bonds, as provided for in Section 4 of this Act or by cash redemption, as provided for in Section 5 of this Act, then and in either such case, each special road and bridge district whose bonds or time warrants shall have been so redeemed shall thereupon be disorganized and be without power to do any further act as a special road and bridge district and all assets of such district or districts shall be turned over to said county and shall be assets of said county.

"Section 7. That upon the disorganization of any special road and bridge district, as provided for in Section 6 of this Act, all interest and sinking fund moneys on hand and held by the Board of County Commissioners of said County on behalf of such district, shall be transferred into a special road maintenance fund, to be used by the County Commissioners of said County for the reconstruction, repair and maintenance of public roads and bridges now existing in said county, or which may become public roads and bridges pursuant to the provisions of this Act, or said funds may be placed in a sinking fund to pay interest or principal of the county road and bridge bonds herein authorized, or said funds may be used to pay interest or principal of said special road and district bonds. The last alternative shall be preferred by said Board.

"Section 8. If it shall be deemed by said Board to be impossible to gain control of said special road and bridge district bonds now outstanding by exchange of county bonds for district bonds or by cash redemption as specified in this Act, then and in that event, said Board may annually levy a sufficient tax upon all taxable property in said County to pay installments of interest on all outstanding district bonds and to create a sinking fund to pay the principal of said bonds at maturity.

"Section 9. That upon the issuance of county road and bridge bonds as provided for in Sections 2, 3 and 4 of this Act, the Board of County Commissioners shall annually levy a sufficient tax upon all taxable property in said county to meet installments of interest on said county road and bridge bonds and to create a sufficient sinking fund to pay maturities of said bonds as provided for in Section 2 of this Act.

"Section 10. That the provisions of this Act shall be liberally construed in order to effectuate the establishment of a unified system of county roads and bridges in said County. If any section or provision of this Act shall be held to be void such holding shall not affect the remainder of the Act or any part thereof unless the same is thereby rendered unworkable and ineffective. All bonds herein mentioned shall share in any legislation that may be, or may have been, enacted by the Legislature in the year 1929, to assist counties and Special Road and Bridge Districts in paying bonded indebtedness.

"Section 11. This Act shall take effect immediately upon its becoming a law.

"Approved June 7, A. D. 1929."

When a local bill is introduced in the House of Representatives and the journal entry of the "affidavit constituting proof of publication" does "immediately follow the journal entry showing the introduction of the bill," it is not necessary under Section 21, Article III, Constitution, as amended in 1928, to make an entry of such affidavit in the journal of the Senate when the bill is transmitted to it by the House of Representatives after its passage by the House. Keene v. Lake County, decided January 13, 1930.

By Section 6, Article IX, Constitution, "The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection," there being now no State bonds outstanding to. be redeemed or refunded. See Chapter 8507, Acts of 1921; Annual Report of State Treasurer J. C. Luning for 1925-1926, 1926-1927, page 9 et seq. See page 4761, Vol. 5, Compiled General Laws of Florida, 1927.

As held in Cheney v. Jones, 14 Fla. 587, revenues raised under Section 2, Article IX, Constitution, for *State* expenses cannot be used for expenses that are forbidden by the Constitution; and as Section 6, Article IX, in effect forbids the issue of State bonds for road construction, by intendment such organic provision forbids the use of *State* revenues raised under Section 2, Article IX, to pay bonds that are forbidden to be issued by the State, the payment of county bonds issued for road construction with *State* revenues would be an evasion of, and an indirect violation of, the intent of Sections 2 and 6, Article IX of the Constitution. See Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. R. 449.

While the Constitution in effect forbids the issue of State bonds for road purposes, it does not forbid or regulate the issue of county or district bonds for road purposes.

Article VIII of the Constitution provides for dividing the State into counties, and Section 10, Article IX, contemplates the creation of "incorporated districts" in the State. The Constitution does not regulate the construction or maintenance of public roads and does not forbid or regulate the issue of bonds by counties and "incorporated districts" to provide funds for the construction of public roads in the counties and districts respectively; nor

does the Constitution regulate the means for paying such county or district road bonds, therefore, in the absence of organic limitations, statutes may authorize counties or districts to construct public roads and may provide for issuing county and district road construction bonds, and provide for the payment of such bonds by any means not forbidden by the Constitution.

Every public road in the State is in a county, but a road in a county may not be within a district formed in a county. In the absence of controlling organic provisions, public roads may be made a State purpose or a county purpose; or they may be made a district purpose if within the district; and though a public road is by statute made a county or a district purpose, it may subsequently by statute be made a State purpose; or if it is made a district purpose, it may subsequently be made a county purpose; but a road not in a district may not ordinarily be made a district purpose.

The Constitution requires the legislature to "authorize the several counties to assess and impose taxes for county purposes." Section 5, Article IX. What is a county purpose may be determined by the express or implied provisions of a statute; and the courts will not interfere with such determination unless it has no legal or practical relations to a valid county purpose. The construction or maintenance of public roads in a county may be a county purpose; and even though by statute the construction or maintenance of a public road in a district in a county may be a district purpose, such construction or maintenance may by statute be made a county purpose; and if the *construction* of a public road in a district may be made a county purpose, the payment for such construction may by statute be made a county purpose even though such construction and payment therefor had by statute thereto-

fore been made a district purpose, the legislature having taxing power and authority over counties and districts and over all public roads in the State and there being no forbidding provisions in the Constitution.

Where a county is duly *authorized* to issue bonds for a proper county purpose, a statute may *require* the county to levy taxes to pay such bonds that are duly issued and sold as required by statute.

Chapter 13937 does not impose upon the county a debt that could only be incurred by, or imposed upon, the districts in the county; nor does the statute impose upon the county a debt that is not for a county purpose. A statute could have authorized the county to construct the public roads that were constructed by the districts in the county. Such roads having been constructed in the county by the districts under legislative authority, and the roads so constructed being in fact a county as well as a district purpose, they may by the statute be made a county purpose in law; and county bonds may be authorized by statute to pay for such public road construction as a proper county purpose, the Constitution not forbidding.

The statute expressly limits the amount of county bonds to be issued to $1,200,000.00, and in effect requires one-twentieth of the amount of the bonds issued to mature five years after the date thereof and an additional one-twentieth to mature each year thereafter until all mature.

In the absence of contrary organic regulations, the provisions of Chapter 13937, making public roads constructed by road districts in Brevard County a county purpose, and authorizing the issuance of county bonds to liquidate bonds heretofore issued by road districts in the county for such public road construction in the county, and requiring county *ad valorem* taxation to pay the county bonds, with

appropriate incidental regulations, are valid; and bonds. to be duly issued under the statute are properly validated.

Affirmed.

TERRELL, C. J., AND ELLIS, BROWN AND BUFORD, J. J., concur.

STRUM, J:, concurs specially.

BROWN, J. (concurring):

As the taxes to be imposed for the payment of these bonds are *ad valorem* taxes, as for a county purpose, I am inclined to the view that the first sentence of Sec. 5, Art. IX, of the Constitution applies. I would have serious. doubts of the validity of this Act if it were compuulsory in its nature, but it merely *authorizes* the county to issue these bonds. There is no question here of an excise tax, or of the power of the Legislature to levy such a tax as a county tax and to require the application of the proceeds. thereof to certain designated county purposes, including road district bonds as to road districts in the county, as was involved in the case of Amos v. Mathews, decided at the present term.

STRUM, J. (concurring specially):

In view of the fact that this statute "authorizes" the county, acting through its chosen officers, to assume district obligations issued for a purpose which is an appro- priate county purpose, but does not "compel" such action; and in view of the fact that the voluntary act of the county commissioners in assuming such obligations by issuing these bonds is tantamount to the voluntary act of the peo- ple of the county (See Jackson Lumber Co. v. Walton.

County, 116 So. R. 771), I concur in the conclusion reached that these bonds are properly validated as county bonds. See Amos et al. v. John E. Mathews, decided at this term.