**L. E. PRICE, et als., v. CITY OF ST. PETERSBURG**

29 So. (2nd) 753   January Term, 1947
April 1, 1947   En Banc

*Charles J. Schuh & Sons,* for appellants.

*Carroll R. Runyon, Lewis T. Wray, Harry I. Young* and *Frank D. McDevitt,* for appellee.

BUFORD, J.:

Appeal brings for review a decree denying injunction and dismissing bill of complaint.

The bill sought to enjoin the City of St. Petersburg, Florida, from enforcing the provisions of chapter 23,522, Special Acts of the Legislature of 1945. The Act declared certain named bodies of water in St. Petersburg to be salt water bodies and declared the fish inhabiting such waters to be salt-water fish and not fresh-water fish. It prohibited the catching or taking of such fish from such waters by the provisions of Sections 2 and 3 of the Act, as follows:

"Section 2. It shall be unlawful for any person to use or cause to be used for the purpose of taking fish any net or seine of any kind or character within any of the waters of Riviera Bay; Bayou Grande, also known as Papy's Bayou; Placido Bayou, also known as Smack's Bayou; Coffe Bayou; City of St. Petersburg, North, Central and South Yacht

Basins; Bayboro Harbor; Port of St. Petersburg; Big Bayou; Bayou Bonita; Little Bayou; Providing, however, that this Section shall not apply to hand cast nets when said cast nets can be cast and spread entirely by manual effort without the use of corks.

"Section 3. The placing of any net or seine of any kind or character excepting common hand cast nets shall be prima facie evidence of their use for the purpose of taking fish."

Appellants present three questions for our consideration, as follows:

"Question 1. Can the Legislature by Special Act which did not become effective until ratified by a majority of electors of a City regulate the method of taking fish in certain waters of the State when said Act is not declared by the Legislature to be a conservation measure?

"Question II. Can the Legislature by Special Act which did not become effective until ratified by a majority of electors of a city discriminate between gill net fishermen, hand cast net fishermen and hook and line fishermen, all of said fishermen engaged in catching fish for profit from certain waters?

"Question III. Do appellants have a remedy by injunction against enforcement of a Special Act by appellee municipality and its officers and agents when said Act is unconstitutional and void?"

In 1933 the City enacted an Ordinance to effectuate the purpose sought to be accomplished by this Act. See Nash v. Vaughn, 133 Fla. 499, 182 So. 827. In 1941 the Legislature enacted by Special Act Chapter 21551 authorizing the City by Ordinance to effectuate the same purpose and pursuant thereto the City adopted an Ordinance seeking to accomplish this purpose. See Bell v. Vaughn, 155 Fla. 551, 21 So. (2) 31. Both of these Ordinances were held invalid by our judgments, supra.

In the Bell case we said:

"We do not think that when Section 30 of Article IV of the Constitution is read in connection with Section 32 of Article XVI, Vol. 26, page 648 F.S.A;. there is any theory under which a municipality can be clothed with power to

regulate the fishing industry. The purpose of both these amendments was to regulate the 'method of taking' both salt and fresh water fish by commissions. As to fresh water fish, the very terms of the quoted part of paragraph 4 are conclusive as to the 'method of taking' and when the Commission prescribes a method, it is not within the power of the Legislature or the City to change it. The power to pass acts 'in aid' of the amendment does not contemplate power to prescribe a method of taking different from that prescribed by the Commission."

This was on the theory that the Legislative Act and the Ordinance applied to both fresh water fish and salt water fish and that both were in contravention of Sec. 30 of Article IV of our Constitution.

There is a vast difference between contents and effect of Sec. 30 of Article IV of our Constitution and of Sec. 32 (evidently misnumbered) of Article XVI. Sec. 30 of Article IV set up and created a Game and Fresh Water Fish Commission and vested in that commission the exclusive power to regulate and control the game and fresh water fish industry of this State, while Sec. 32 of Article XVI merely authorized the Legislature to create a board or commission and vest therein the power to make rules and regulations to control the industry of taking salt water fish and salt water products of this State. The matter of extent of authority to be given such board or commission was left entirely to Legislative discretion and, therefore, there was no withdrawal of power from the Legislature to deal with these matters either by special or general Acts.

The Legislature has not divested itself of any power to legislate in regard to the fishing industry in the salt waters of the State, nor has such power been withdrawn by the Constitution. See City of Miami v. State, 139 Fla. 598, 190 So. 774, wherein an analogous question was discussed and decided. See also State ex rel Cheney v. Sammons, 62 Fla. 303, 57 So. 196; Gardner v. Fuller, City Director of Finance, et al., 155 Fla. 833, 22 So. (2) 150 and Harris v. Baden, 154 Fla. 373, 17 So. (2) 608.

Sec. 1 of Chapter 23522 Special Acts of 1945, is inter alia:

"The following bodies of water lying within the corporate limits of the City of St. Petersburg, Florida, are, and they are hereby declared to be entirely salt water and said salt water bodies of water are inhabited only by salt water fish and are not inhabited by any kind or type of fresh water fish, to-wit:"—

If these were salt waters and salt water fish the legislature had power to act and to adopt statutes controlling or regulating the taking of such fish from such waters, but if they were fresh water and fresh water fish then the power to regulate or control the taking of the same had been divested from the legislature by Sec. 30 of Article IV of our Constitution. So it is the legislature had the duty to determine these facts to reach the conclusion that it was authorized to legislate in this regard.

In the case of Bachlott v. Buie, 124 S.E. 339, 158 Ga. 705, the court held that the right of the legislature to enact a law, touching matter purely legislative or political, depends upon the existence of facts, and the enrolled act recites the existence of such fact, the act not impairing or destroying private rights, the recital in the act of the existence of such facts being necessary to enable the legislature to pass the law, is conclusive and binding, and cannot be traversed.

But, the Court in Block v. Hirsh, 41 Sup. Ct. 458, 65 L. Ed. 864, in determining the existence of an emergency for the purpose of rent control stated that a legislative declaration by a legislature concerning public conditions, that by necessity and duty it must know, is entitled to great respect.

That the legislature has determined certain facts to be true may, in some instances, be inferred from its enactments in other instances by a specific declaration to that effect. The Florida court has so determined in several cases. While the Florida Court seems to hold with the general rule, its statements are not as dogmatic as others and seem to accept such a determination of fact unless it is clearly erroneous, arbitrary or wholly unwarranted.

What is a county purpose may be determined by the express or implied provisions of a statute; and the courts will not interfere with such determination unless it has no legal

or practical relations to valid county purposes. State v. Brevard County, 99 Fla. 226, 126 So. 353. The determination of facts upon which the validity or constitutionality of statutes may depend is primarily for the legislature, the general rule being that the courts will acquiesce in the legislative decision, unless it is clearly erroneous, arbitrary or wholly unwarranted. McSween v. State Live Stock Sanitary Board of Florida, 97 Fla. 750, 122 So. 239.

Where a municipality may issue bonds to be paid by taxation, only for municipal purposes, and only as authorized by charter or other statutory enactments, whether the object for which bonds are to be issued is a municipal purpose may not be arbitrarily determined by legislation without regard to organic limitations; but a statutory determination of what is an appropriate municipal purpose will not be disturbed by the courts, where the purpose designated is in fact municipal in its nature and no provision or principle or organic law is violated in such designation. Peterson v. Town of Davenport, 90 Fla. 71, 105 So. 265.

The legislature not having been divested of its power in this regard, we are asked to determine whether or not the legislature exercised the power in a lawful manner.

This was a Special Act.

Sec. 21 of Article III as amended at the General Election of 1928, provides, inter. alia:

"Provided, however, no publication of any local or special law is required hereunder when such local or special law contains a provision to the effect that the same shall not become operative or effective until the same has been ratified or approved by a majority of the qualified electors participating in an election called in the territory affected by said special or local law."

This provision of the Constitution was complied with. The referendum election was had as required by the Act and resulted in the approval of the Special Act.

The contention that such purpose cannot be effectuated by Special Act is without merit. See Ex Parte Powell, 70 Fla. 363, 70 So. 392; Holland v. Roberts, 149 Fla. 308, 5 So. (2) 608.

It is too well settled to require the citation of authorities that the legislature may prescribe the manner and means by which game and fish may be taken, when not inhibited by the Constitution.

There is no discrimination between persons in the operation of this Act. All persons are allowed to fish in the waters to which the Act applies in the same manner and by the same means. See State v. Hand, 99 Fla. 799, 119 So. 376 and cases there cited.

The third question has no application because the Act is neither unconstitutional, nor void.

The decree is affirmed.

THOMAS, C. J., TERRELL, CHAPMAN, ADAMS and BARNS, JJ., and McNEILL, Associate Justice, concur.