M. Jackson Dorney City Attorney Miramar
QUESTION:
Does the permit procedure by the Game and Fresh Water Fish Commission as provided by s. 372.922, F. S., preclude a municipality from regulating or prohibiting the possession of wildlife within the municipal boundaries?
SUMMARY:
Section 9, Art. IV, State Const., vests in the Game and Fresh Water Fish Commission the exclusive authority to exercise all of the state's regulatory power over all wild animal life (except for penalties and license fees); therefore, a municipality is precluded from regulating or prohibiting the possession of wild animal life within its corporate limits.
Your question was specifically addressed to whether a municipality could prohibit the possession of a cougar as a pet within the municipal boundaries when the Game and Fresh Water Fish Commission has issued a permit to allow an individual to keep such an animal at his residence within the municipality; however, because the Constitution vests all regulatory power of the state with respect to wild animal life and freshwater aquatic life exclusively in the Game and Fresh Water Fish Commission (except for penalties and license fees), the principles relevant to your specific inquiry are applicable to the possession of all wildlife.
Section 9 of Art. IV, State Const., among other things, provides:
 The [Game and Fresh Water Fish] commission shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute. The legislature may enact laws in aid of the commission, not inconsistent with this section.
This section of the Constitution vests in the Game and Fresh Water Fish Commission the exclusive power to exercise all the state's regulatory power over all wild animal life (except for license fees and penalties). No express or implied exception to this constitutional investiture of power is provided in s. 9 of Art. IV, and my research has revealed no other constitutional provision or judicial construction which provides an exception to this section that would vest either the Legislature or the municipalities with the authority to enact or enforce legislation which regulates or prohibits the possession of wild animal life.
Any contention that the home rule powers granted to municipalities by s. 2, Art. VIII, State Const., and the Legislature in ch. 166, F. S., authorize a municipality to enact or enforce legislation which regulates or prohibits the possession of wildlife within its municipal boundaries must fall. Section 2(b) of Art. VIII, State Const., among other things, provides: `Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.' While this grant of power is broad, it cannot be construed as an implicit exception from or nullification of the express terms of s. 9, Art. IV, State Const. Nor may the Legislature delegate to municipalities, through the Municipal Home Rule Powers Act, ch. 166, a state regulatory power it does not possess and which has been exclusively vested by the Constitution in the Game and Fresh Water Fish Commission. The well-established principle of expressio unius est exclusio alterius is applicable to this situation. This principle states that when the Constitution expressly provides the manner in which a thing is to be done, then it impliedly prohibits the thing from being done in a different manner. While the Constitution does not in express terms prohibit the doing of a thing in a different manner, the fact that the Constitution has prescribed the manner in which the subject matter shall be done is itself a prohibition against a different manner of doing it. See In re Advisory Opinion of Governor Civil Rights, 306 So.2d 520 (Fla. 1975), and Weinberger v. Board of Public Instruction of St. Johns County, 112 So. 253
(Fla. 1927). Therefore, when the Constitution prescribes the method by which something is to be done, that method is exclusive, and it is beyond the power of the Legislature to enact a statute or a municipality to enact an ordinance that would negate the purpose of the constitutional provision. See Leonard v. Franklin,93 So. 688 (Fla. 1922). Thus, a municipality cannot enact or enforce legislation which regulates or prohibits the possession of wild animal life within its municipal boundaries; nor may the Legislature constitutionally delegate to municipalities the regulatory power of the state over wild animals by the Municipal Home Rule Powers Act or any other general or special act.
Section 168.09, F. S. 1971, which is preserved and continued in effect by s. 166.042(1), F. S., is also referred to as authority to regulate or prohibit the possession of wild animal life by the municipality. Section 168.09 provided:
 The city or town council may regulate or prohibit the keeping in the corporate limits of the city or town, or the running at large within the said limits, of horses, cattle, swine, sheep, goats, geese and other animals, and impound the same and hold the same and, on notice to the owners, authorize the sale of the same or any portion thereof for the penalty imposed by any ordinance, and the costs, fees and expenses of the proceeding; license and regulate the running at large of dogs and authorize the killing of the same when running at large contrary to the provisions of any ordinances to that effect.
This section would provide authority for a municipality to regulate or prohibit the possession of wild animal life within the municipal boundaries only if the phrase `and other animals' could be interpreted to include wild animal life. In the case of special words which are followed by general words, the rule of construction ejusdem generis should be applied to determine what types of enumerated items included in the general category. The rule of ejusdem generis was defined in Van Pelt v. Hilliard,78 So. 693 at 697 (Fla. 1918), as follows:
 By the rule of ejusdem generis, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. . . .
 The words `other' or `any other' following the enumeration of particular classes are to be read `as other such like,' and include only others of like kind or character.
Accord: Shepard v. Thames, 251 So.2d 265 (Fla. 1971); ex parte
Amos, 112 So. 289 (Fla. 1927). Applying this rule of construction to the instant statute, it is clear that the phrase `and other animals' must refer to other animals like `horses, cattle, swine, sheep, goats, geese.' The common denominator of all these enumerated animals is that they are all domesticated animals as opposed to feral or wild animals. Therefore, the statute, s. 168.09, did not provide authority for a municipality to prohibit or regulate the possession of wild animal life. Furthermore, even assuming for purposes of discussion that the phrase `and other animals' could be construed to include wild animals, such as cougars, the Legislature does not possess the authority to grant to municipalities the state's regulatory power over wild animal life; such regulatory power is conclusively vested by the Constitution in the Game and Fresh Water Fish Commission.
A number of judicial decisions and Attorney General Opinions have been rendered which discuss the constitutional nature and extent of the commission's regulatory power with respect to wild animal life and freshwater aquatic life. In Bell v. Vaughn, 21 So.2d 31
(Fla. 1945), the Florida Supreme Court held that the 1942 amendment to the 1885 Constitution, which added s. 30 of Art. IV, vested the Game and Fresh Water Fish Commission with the exclusive authority to regulate the method of taking freshwater fish; it was not within the power of the Legislature or a municipality to change the method prescribed by the commission. As the court stated at 32:
 Since the purpose of Section 30, Article Four was to vest the `management, restoration, conservation and regulation' of fresh water fish in the Game and Fresh Water Fish Commission, it would seem to necessarily follow that the purpose of the quoted part of paragraph four was to clothe the Game and Fresh Water Fish Commission with exclusive power to fix bag limits, open and closed seasons, and the `method of taking' fresh water fish from Florida waters. (Emphasis supplied.)
Subsection (1) of s. 36, Art. IV, State Const., among other things, provided:
 From and after January 1, 1943, the management, restoration, conservation, and regulation, of the birds, game, fur-bearing animals, and freshwater fish, of the State of Florida, and the acquisition, establishment, control, and management, of hatcheries, sanctuaries, refuges, reservations, and all other property now or hereafter owned or used for such purposes by the State of Florida, shall be vested in a Commission to be known as the Game and Fresh Water Fish Commission. . . .
Section 9, Art. IV, State Const., in its present form, among other things provides that `[t]he [Game and Fresh Water Fish] commissionshall exercise the regulatory and executive powers of the statewith respect to wild animal life . . . .' (Emphasis supplied.) This language is, for purposes of this opinion, essentially the same as subsection (1) of s. 30, Art. IV, in that both sections vest the regulation of wild animal life exclusively in the commission. Subsection (7) of s. 30 also provided that the Legislature could `enact any laws in aid of but not inconsistent with, the provisions of this amendment . . . .' But as the Florida Supreme Court stated in Bell v. Vaughn, supra, at 32:
 [W]hen the Commission prescribes a method [of taking fresh water fish], it is not within the power of the Legislature or the City to change it. The power to pass acts `in aid' of the amendment does not contemplate power to prescribe a method of taking different from that prescribed by the Commission.
See also Price v. City of St. Petersburg, 29 So.2d 753 at 755 (Fla. 1947), which followed Bell v. Vaughn, supra, and stated that s. 30 of Art. IV, State Const. 1885, divested the Legislature of the power to regulate or control the method of taking freshwater fish.
In Whitehead v. Rogers, 223 So.2d 330 (Fla. 1969), the Florida Supreme Court was faced with the problem of whether a rule promulgated by the Game and Fresh Water Fish Commission, which established an open season for hunting between set dates, controlled over a state statute that prohibited the use of firearms on Sunday. The court held that the commission's rule controlled and that the regulation of Sunday hunting is within the exclusive control of the Game and Fresh Water Fish Commission and not the Legislature. This case is directly on point since the Legislature attempted to prohibit the doing of a thing which the commission by rule allowed. See also Beck v. Game and Fresh Water Fish Commission, 33 So.2d 594 (Fla. 1948), and State ex rel. Griffin v. Sullivan, 30 So.2d 919 (Fla. 1947).
In a more recent case, Florida Department of Natural Resources v. Florida Game and Fresh Water Fish Commission, 342 So.2d 495 (Fla. 1977), under the present constitutional provision establishing the commission, the Florida Supreme Court held that, because the Constitution vests the commission with the executive power of the state with respect to wild animal life and freshwater aquatic life, the Legislature could not pass laws depriving the commission's exercise of its executive budgetary authority. In this case, the Legislature had attempted through a type one transfer, which places the transferred agency under the direct supervision and control of the head of the department to which the agency has been transferred, to transfer the commission's budgetary functions to the Department of Natural Resources. The Supreme Court at 497 stated that `while the legislature may pass laws affecting the Commission's exercise of its executive budgetary authority, it may not pass laws depriving the Commission of such authority.'
In AGO 071-337, this office was asked whether a city could declare itself a game preserve and enforce laws, relating to the preservation or control of wildlife or fish within the preserve, which are more stringent than state laws. In that opinion it was concluded that a municipality `may not enforce ordinances relating to the preservation or control of wildlife or fish within its corporate limits.' This office went on to state in that opinion that `[t]he Game and Fresh Water Fish Commission and the Department of Natural Resources, under their respectiveconstitutional and legislative mandate, have effectively preempted the regulatory field in these areas.' (Emphasis supplied.) See also AGO's 072-41 (which concluded that the Legislature is powerless to transfer any of the powers, duties, or functions of the Game and Fresh Water Fish Commission to the supervision of any other department in the executive branch) and 070-34 (which concluded that the Department of Administration had no jurisdiction over the commission as to personnel matters).
In consideration of the judicial decisions and principles discussed in the above Attorney General Opinions, it appears that s. 9 of Art. IV, State Const., conclusively vests in the commission the exclusive authority to exercise all of the state's regulatory power over all wild animal life. Section 9 of Art. IV further provides that, `[t]he legislature may enact laws in aid of the commission, not inconsistent with this section,' and in recognition of the constitutional delegation contained in s. 9, the Legislature has enacted ch. 372, F. S., in aid of the Game and Fresh Water Fish Commission. More specifically, s. 372.922(1) makes it unlawful for any person to possess any wildlife, whether indigenous to Florida or not, until he has obtained a permit from the commission. And subsection (3) empowers the Game and Fresh Water Fish Commission to `establish regulations and requirements necessary to insure that permits are granted only to persons qualified to possess and care properly for wildlife and that permitted wildlife possessed as personal pets will be maintained in sanitary surroundings and appropriate neighborhoods.' Pursuant to its statutory and constitutional authority the Game and Fresh Water Fish Commission has promulgated a comprehensive rule covering all wildlife, including cougars. See Rule 39-6, F.A.C. This rule limits the keeping of wildlife as personal pets to persons residing in an `appropriate neighborhood,' which is defined in a manner to include urban as well as rural environments. Rule 39-6, F.A.C., is written in a manner which would allow the commission to grant a license to an individual desiring to maintain certain types of wildlife, including a cougar, as a personal pet within municipal city limits provided that the other criteria of the rule are met.
Prepared by: Craig B. Willis, Assistant Attorney General