168 So.2d 745 (1964)
STATE of Florida, Appellant,
v.
OKALOOSA COUNTY AIRPORT AND INDUSTRIAL AUTHORITY, Appellee.
No. 33691.
Supreme Court of Florida.
November 18, 1964.
William Frye, III, Pensacola, for appellant.
Lloyd C. Powell, Crestview, and Freeman, Richardson & Watson, Jacksonville, for appellee.
ERVIN, Justice.
This cause is here on appeal from a final decree of the Circuit Court of Okaloosa County validating an issue of Special Fund Certificates in the amount of $275,000.00. The appellant is the State of Florida. The appellee is the Okaloosa County Airport and Industrial Authority, Okaloosa County, Florida (hereafter referred to as the Authority), which was created by the enactment of Chapter 59-1629, Laws of Florida, Special Acts of 1959.
The facts are not in dispute. The Authority entered into a contract with Fair-child-Stratos Corporation (hereafter referred to as Fairchild), a Maryland corporation, wherein the Authority agreed to construct certain buildings and improvements referred to as the "project" upon property owned by the Authority adjacent to the existing Bob Sikes Airport located near Crestview, Florida, in Okaloosa County. The project to be constructed is to provide facilities for the repair, maintenance and care of aircraft of the flying public using the Authority's Bob Sikes Airport. Such facilities were determined by the Authority to be necessary and in the public interest and that Fairchild is qualified to operate the same. The contract provided that the improvements would be financed through the issuance by the Authority of said Certificates in amount not to exceed $275,000.00.
On the date the above contract was entered into, the Authority also entered into *746 a lease agreement with Fairchild whereby the Authority leased the project to Fairchild for a term beginning April 15, 1964 and ending September 1, 1976. The lease agreement provides that said Certificates are to be retired solely from the rents paid by Fairchild.
Both parties present the following question to this Court:
Is an agreement between a private corporation and Okaloosa County Airport and Industrial Authority which provides that the Authority construct certain facilities at an airport of the Authority and thereafter lease such facilities to said private corporation for a term of a little more than twelve years, and providing that the Authority finance the cost of such facilities through the issuance of revenue certificates payable solely from the rentals to be paid by said corporation under said lease, invalid as a violation of Section 10, Article IX, of the Constitution of Florida?
Appellant's sole contention is that the plan of financing the project as contemplated by the agreement and lease between the Authority and Fairchild is essentially identical with a development plan which this Court held to be invalid under Section 10, Article IX of the Florida Constitution F.S.A. in State v. Clay County Development Authority, Fla., 140 So.2d 576. In that case, the following language appears which appellant contends is applicable to the facts of the instant case:
"* * * it is crystal clear that the primary purpose to be served by the issuance of these obligations is the financing of a private enterprise contrary to the express provisions of Section 10 of Article IX of the Constitution of this State, F.S.A. The public obligation is to be incurred for the sole purpose of building and equipping this industrial plant. The fact that such building and structures will occupy only a small portion of the 1300 acres of land of the Authority is of no consequence in determining whether the purpose of improvement is incidental and falls within the ambit of our holdings in the Gate City Garage [Gate City Garage, Inc. v. City of Jacksonville, Fla., 66 So.2d 653] and Panama City [Panama City v. State, Fla., 93 So.2d 608] cases. The dominant and paramount purpose is to lend the credit of the county to a private corporation to finance a private enterprise for private profit which will be under the exclusive control and in the exclusive possession of such enterprise for more than twenty-five years. The only possible public purpose which it serves is to promote the general development of the area by furnishing employment to the residents of Clay County. * * *"
The facts in the instant case do not parallel the facts in the Clay County case. There, the Clay County Development Authority agreed to construct and equip an industrial plant on a portion of land previously acquired by the Authority and lease the plant to a private corporation for the manufacture of plastic products. The construction and equipment of the plant was to be financed by the issuance of revenue certificates of the Authority to be paid from rentals by the corporation. This Court found, as the language quoted above reflects, that the primary purpose to be served by the issuance of the certificates was to benefit a private enterprise but that the public would benefit only incidentally in that employment would be available to residents of the area, which in turn would promote the general development of the area.
The facilities proposed by the Authority in the case at bar constitute an additional and direct benefit to the public by improving service at the local airport, the adequate provision of which is the primary public purpose. Clearly, there is an interdependence between the Authority's airport and the facilities proposed for the repair, maintenance and care of the aircraft of the flying public using said airport. For example, runways on a public airport are *747 not the only facilities essential to the functional operation of an adequate airport. A number of other facilities and aids are essential, including those contemplated in the project here. However, no clear interdependence between the plastics factory and a recognized public purpose was found to exist in the Clay County case.
The facts in State v. Dade County, Fla., 62 So.2d 404, are strikingly similar to the facts in the instant case. There, we upheld the Dade County Port Authority plan to enter into a lease agreement with National Airlines, Inc., whereby the airline was to rent a warehouse and overhaul shop to be constructed on a part of Miami International Airport by the Authority which would finance the construction by issuing revenue certificates payable from rentals to be paid by the airline.[1]
The chancellor in the instant case correctly held that Chapter 59-1629, Laws of Florida, Special Acts of 1959, authorized the issuance of the certificates in question and that the same are not invalid under Section 10, Article IX, of the Florida Constitution.
Affirmed.
DREW, C.J., and THOMAS, ROBERTS, O'CONNELL and CALDWELL, JJ., concur.
THORNAL, J., concurs with opinion.
THORNAL, Justice (concurring).
I agree to the opinion. However, I detect very little distinction between the facts here and those in State v. Clay County Development Authority, Fla., 140 So.2d 576. Since I dissented there, I am led to concur in the opinion here which I apprehend to be consistent with the views expressed in my Clay County dissent.
NOTES
[1] For an informative discussion of the general subject of industrial development bonds, see "Industrial Development Bonds: Judicial Construction vs. Plant Construction," in University of Florida Law Review, XV, No. 2, Fall 1962, pp. 262-297, inc., by Don R. Livingstone.