275 So.2d 505 (1973)
DADE COUNTY, a Political Subdivision of the State of Florida, et al., Appellants,
v.
PAN AMERICAN WORLD AIRWAYS, INC., a New York Corporation, Appellee.
No. 41536.
Supreme Court of Florida.
February 7, 1973.
Rehearing Denied April 5, 1973.
*506 Stuart Simon, Dade County Atty., and Murray A. Greenberg, Asst. County Atty., for appellants.
Richard H. Hunt, Jr., Steven A. Schultz, and Smathers & Thompson, Miami, for appellee.
William G. Bell, Jr., Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, Miami, and Gambrell, Russell, Killorin, Wade & Forbes, Atlanta, Ga., for Eastern Air Lines, Inc. and Delta Air Lines, Inc., amici curiae.
Woodrow M. Melvin, Jr., Karl B. Block, Jr., and Mershon, Sawyer, Johnston, Dunwody *507 & Cole, Miami, for Marine Exhibition Corporation, amicus curiae.
Darrey A. Davis of McCarthy, Steel, Hector & Davis, Miami, for National Airlines, Inc., amicus curiae.
DEKLE, Justice.
This cause is before us on direct appeal from the Circuit Court, Dade County. The decision sought to be reviewed expressly construes several provisions of the Florida Constitution, thereby vesting jurisdiction of the appeal in this Court under Fla. Const. art. V, § 3(b)(1), F.S.A.
The facts, as stipulated by the parties, are that plaintiff-appellee, a commercial airline, brought suit against defendants-appellants, Dade County and the Board of County Commissioners acting as the Dade County Port Authority, challenging the legality of the 1970 ad valorem tax assessment of its leasehold interests at Miami International Airport. The trial court granted plaintiff's motion for summary judgment, declared the 1970 ad valorem tax assessment against plaintiff's leasehold interests invalid, and enjoined defendants from collecting 1970 ad valorem taxes. We affirm these conclusions.
Appeal was originally filed in the District Court of Appeal and then transferred to this Court since construction of the constitution was involved below. The case is one of first impression.
The Port Authority (County) controls, maintains and operates the Miami International Airport; all of the real property, both improved and unimproved, located within and upon the airport is owned by Dade County. The airline leases from the county certain of the airport property and maintains on the leased premises an operations and aircraft overhaul base, an airline terminal facility, executive reservations and accounting offices and a flight simulator building and warehouses. All of the airline's leasehold interests in the real property involved were placed on the Dade County real property assessment roll and assessed for taxation by the county for the first time in 1970 in the aggregate amount of $14,866,490.00, indicating a tax liability of $299,336.78.
The construction of some, but not all, buildings leased by the airline, and the improvements or additions to certain other leased buildings, were financed through the issuance and sale of revenue bonds. Revenue bond financing of buildings leased by the plaintiff, Pan American World Airways, totalled $7,032,863.71. These "bond revenue properties" (though some had only additions which were bond financed) were assessed at $7,780,537.00 of the above aggregate amount of $14,866,490.00 of both the revenue bond properties and the non-revenue bond properties. As of the relevant taxing date, January 1, 1970, the principal amount of the revenue bonds had been reduced from said $7,032,863.71 to a total balance of $6,485,000.00 by virtue of lease rental payments made by the airline, which payments were directly applied to retire the bonded indebtedness.
The airline's leasehold interests in the revenue bond properties were created by leases (leases # 4 and # 5), containing the following provision:
"No rentals, fees, licenses, excise or operating taxes, tolls or other charges except those expressly provided in this Supplemental Agreement, and charges for utilities mentioned in the Lease Agreement, shall be charges by the Authority against or collected from, directly or indirectly, Pan American for any of the facilities, rights, licenses and privileges granted by this Supplemental Agreement. It is expressly understood and agreed that the Authority shall, if not prohibited by law, assume and pay any and all taxes or improvement charges of any nature whatsoever which may be levied or assessed against the New Facilities, or the leasehold interest of Pan American therein." (emphasis ours)
*508 Leases on the other properties contain the following provision:
"The Authority agrees that no rents, fees, charges or tolls, other than those expressly provided in this Lease, shall be charged or collected by it from Lessee or from Lessee's employees, suppliers of materials or furnishers of service for the use of any of the premises, facilities, licenses and privileges expressed in or reasonably inferred from these presents or for any of the services required to be performed hereunder by the Authority, the rents, fees, and charges expressly provided herein being full and complete consideration and compensation to Lessor for the use of said premises, facilities, licenses and privileges and the performance of said services." (emphasis ours)
The airline contends that by virtue of the foregoing provisions in its various leases, the leasehold interests owned by it may not be taxed, either by the County or by any State agencies such as the Board of Public Instruction, Central and Southern Flood Control District, or by the Florida Inland Navigation District. Alternatively, the airline contends that if any ad valorem taxes are assessed against its leasehold interests, the county has agreed to pay, and is liable for, all such taxes.
In one sense, the leases in question are really ones in which the county obligated itself in effect to a "net rental" contract which apparently took into consideration the non-payment of taxes. In this manner if viewed in a posture of the leaseholds "having" to be taxed (under appellant's contention), any "tax" is in effect included in the net rental payments.
The county argues that all of the leasehold interests in question are subject to ad valorem taxation for the 1970 tax year by virtue of Article VII, § 10(c), of the Florida Constitution, which became effective January 7, 1969.[1] Article VII, § 10, provides in pertinent part as follows:
"Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
* * * * * *
"(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." (emphasis ours)
The airline contends, and the trial court held, that the foregoing provision of the constitution requires implementation by the Legislature before it can become effective. It well may so require, and there may, as the county contends, already exist appropriate implementing statutes to fulfill such requirement. In either instance, however, art. VII, § 10(c), does not apply here. The leases here involving revenue bond properties were created prior to the effective date of this constitutional provision, *509 and in this respect we affirm the able trial judge's conclusion that the leaseholds are not taxable under Article VII, § 10(c), because it is patently prospective in its application; and this prospective application only is spelled out in the schedule following this constitutional provision in Article XII, §§ 7(a) and (b), which states:
"(a) All actions, rights of action, claims, contracts and obligations of ..., corporations and public bodies ... existing on the date this revision becomes effective shall continue to be valid as if this revision had not been adopted... .
"(b) This revision shall not be retroactive so as to create any right or liability which did not exist under the Constitution of 1885, as amended, based upon matters occurring prior to the adoption of this revision."
In this connection we recognize that Lease No. 2 pertaining to non-revenue bond properties is dated subsequent to the effective date of Article VII, § 10(c). Nevertheless, this new constitutional provision applies to properties financed by revenue bonds only and accordingly Article VII, § 10(c) does not affect Lease No. 2.
At this point we turn to the remaining questions of whether the leasehold interests are taxable without regard to Article VII, § 10(c). Leasehold interests in private property with certain exceptions[2] are not subject to ad valorem taxation under Florida law. However, the Legislature in 1961[3] decided to impose ad valorem taxes upon public property which was exempt or immune from taxation but being used by private interests in connection with a profitmaking venture. The leaseholds here in question were generally made in 1962 and subsequent years; thus they were subject to such law and its exemptions. The 1961 statute (§ 192.62) was not expressly directed toward leaseholds by name but imposed a tax "whether such use ... is by lease, loan, contract of sale... ." The statute then set forth certain exemptions and in § 192.62(2)(c) provided that when the property is owned (which is the case here) by the state, county or municipality and leased or otherwise made available to private interests by such public body "for a consideration in the performance by the public body of a public function or public purpose authorized by law ... ." it is exempt. The phrase which followed this quote attempted to apply the statute to leases whose effective dates were prior to the Act. This was held unconstitutional in Hillsborough County Aviation Authority v. Walden, 210 So.2d 193, 197 (Fla. 1968) (Ervin, J.). Walden held Bartkes' Restaurant at the old Tampa Airport to be exempt under the statute on the basis that it was leased and to be used for a "predominantly" public purpose and only incidentally for a "private" purpose, holding that if the opposite were true then such properties would not be exempt,[4] which was the holding as to the motel there involved.
We have also held that incidental benefit to private interests does not invalidate bonds and certificates issued for a predominantly public purpose.[5] The construction, operation and maintenance of airports has been recognized as a valid *510 public purpose justifying the issuance of bonds.[6]
In our judgment the airline provides a recognized public purpose which justifies leases such as those in the instant case between the county and the airline and the use of public financing for the facilities used by airlines. The scholarly opinion by Chief Judge Pearson in City of Opa-Locka v. Metro Dade County, 247 So.2d 755 (Fla.App.3d 1971), cert. den. 252 So.2d 802 (Fla. 1971), supports our position in saying: (pp. 758-759)
"The operation of airports by counties is clearly for a public purpose, as is the operation of airport facilities and projects. Chapter 22963, Laws of Florida, 1945, as amended, granting the Boards of County Commissioners of certain counties (including Dade County) additional powers to acquire and operate airports and airport facilities, states, in pertinent part, in Section 8:
"`All powers, acts and deeds hereby conferred or authorized are hereby found to be and made a county purpose.'
"Chapter 22846, Laws of Florida, 1945, Chapter 332, Fla. Stat., authorizing counties and municipalities to acquire, operate, maintain and lease airports and airport facilities, also provides, in relevant part, in Section 3:
"`The acquisition of any lands for the purpose of establishing airports or other air navigation facilities, * * * the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities [defined in the Act to include counties], are hereby declared to be public, government and municipal functions, exercised for a public purpose. * * *'
"It is thus clear that the Legislature has declared the operation of airports and airport facilities to be municipal functions for a public purpose."[7]
(Brackets by the 3d DCA.)
The present airport began as "Pan American Airport" or "36th Street Airport". It was when the federal government conveyed to Dade County two additional contiguous airports that the facilities were consolidated in 1946. To make this airport the great facility which it was to become, the Dade County Port Authority found it necessary to issue $3 million in revenue certificates to finance the additional facility and to meet federal requirements.
The present petitioner at that time came before this Court in Seaboard Air Line R. Co. v. Peters, 43 So.2d 448 (Fla. 1949), seeking our sanction of those revenue certificates without a vote of the freeholders of Dade County for such financing, urging that "Miami International Airport" was of extreme importance and referred to Pan American Airways as "one of the largest if not the largest airline in the world [which] maintains on said airport its overhaul base in which all of the airplane motors and other equipment of every airplane used in its worldwide system is overhauled; Eastern Airlines, which is one of the largest of the airlines in America, maintains its system overhaul base on said airport; in addition to these, many other airlines overhaul their motors and airplanes at said base... ." (p. 452)
The assertions in that cause referred to the millions of dollars involved and the *511 millions of passengers passing through this important international air facility and left no doubt whatever of its important public purpose and cited Ch. 22963, Acts of 1945, Laws of Florida, authorizing Florida counties in the category of Dade County to operate such airports and other facilities as "county purposes". State v. Brevard County, 99 Fla. 226, 126 So. 353 (1930), confirmed the Legislature's power to declare county purposes with which the courts would not interfere.
In our language in that case we said inter alia:
"Our modern airports render a public service similar to other governmental functions which promote the health, comfort and safety of the people and the general welfare of our State and Nation." (emphasis added)
Justice Terrell's, as always elucidating, language in this holding stated that we approved petitioner's request "solely on the ground that the development and acquisition of Miami International Airport under successive acts of the Legislature, including Ch. 25166, Acts of 1949, have made it an essential function of local government and being so the duty of Dade County under the law to support and maintain it is as pressing as it is to maintain any other governmental function or necessity" (Fla. Stat. § 135.01 and § 135.02, F.S.A.). (emphasis added)
We cannot recede from this clear governmental purpose which was determined in 1946 and has continued in the same manner and at the same location by the same governmental entity for over a quarter of a century. It cannot be a "public purpose" in order to provide the initial financing and then, having become affluent, reject its basic public purpose in order to create an additional basis for taxation.
Therefore, the property at the Miami International Airport leased to the airline is clearly leased and used for the public purpose of providing indispensable air transportation and an air terminal to that great metropolitan area as an essential public service, certainly as clearly a public purpose as the operation of a restaurant at the Tampa Airport in Walden. Accordingly, the airline, under the test established in Walden, meets the requirement of a public purpose in order to come within the statutory exemption of § 196.25 (1969) (formerly § 192.62), under which all leasehold interests in this proceeding are exempt under that statutory section from ad valorem taxes.[8]
Appellant contends in regard to this requirement of the use of the facility for a "public purpose" (to which it has expressly stipulated) that the property is not used "exclusively for a public or municipal purpose" in accordance with the 1968 Fla. Const. art. VII, § 3(a). In analyzing this argument, we recognize at the outset that Article VII, § 3(a) (1968), is a completely new treatment of municipal tax exemptions. Nevertheless, Article XVI, § 16, in the 1885 Constitution is quite similar to Article VII, § 3(a) (1968) in many respects. Article VII, § 3(a) (1968) provides:
"All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." (emphasis ours)
Article XVI, § 16 (1885) stated that:
"The property of all corporations ... shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." (emphasis ours)
As mentioned earlier in this opinion, all of the airline's leases, but one, are *512 dated prior to the effective date of the 1968 Constitution. Even so, the old and new constitutional sections quoted above are comparable insofar as relevant here,[9] and our rulings concerning these constitutional provisions apply equally to leases dated before and after the day the 1968 Constitution became effective.
We return now to the main thrust of appellant's argument, which urges us to hold that the leased property does not satisfy the constitutional tax exemption for "municipalities" in Article VII, § 3(a), or Article XVI, § 16, on the theory that the property is not used exclusively for public purposes inasmuch as the airline has a private purpose of engaging in a profitmaking venture. We cannot accept this contention and for good reason. The word "exclusively" in these constitutional provisions modifies the preceding verb "used" and its object "public purposes." ("used exclusively for public purposes") The USE is a public one. So, in order to determine whether the property is used exclusively for a public purpose we must ask ourselves the following two questions:
(1) Whether the facility is a "public purpose" and, if so,
(2) Whether the property is used exclusively for that "public purpose."
In answering the first question, we must necessarily define "public purposes." Under our decisions "public purposes" are projects primarily and predominantly for the public benefit even though there may be some incidental private purpose, too.[10] In this connection, it must be kept in mind that upon concluding that the project meets the test of a "public purpose", such an incidental private purpose as here necessarily loses its identity as a private matter and is merged within the term "public purpose." In other words, "public purposes" is a legal concept encompassing inconsequential private purposes. Thus the private character of a "public purpose" is not material to the second question concerning "exclusive use". Precisely stated, the second question is whether the property is used exclusively for purposes defined as "public purposes." In this context, the property can be used exclusively for public purposes if the private purpose has merged into the term "public purposes" and if the property is used solely for such "public purposes".
By this analysis we have not changed the ordinary meaning of "exclusive" from its dictionary definition of "single," "sole" and "entirely." Instead, we have pointed out that the requirement for "exclusive use" is not affected by a private purpose incorporated into the meaning of "public purpose." Stated in another way, the property must be used exclusively for purposes designated as "public purposes" which may include such an incidental private purpose as here.
Applying these principles to the situation before us, we conclude that the property leased to the airline is used exclusively for public purposes. The parties have stipulated that the airport facility is used for a public purpose; the incidental private purpose of a profitmaking venture by the airline has merged into the meaning of the stipulated "public purpose"; and there is no evidence in the record whatever to indicate that the property is not being used solely for the stated "public purpose."
*513 In arriving at this conclusion, we recognize another argument presented by appellant that the leaseholds are owned by the airline, not by a municipality as required by Article VII, § 3(a) (1968). This argument is equally without merit. There is no requirement in Article VII, § 3(a) (1968), or old Article XVI, § 16 (1885), that the municipality own the leaseholds; the municipality must only own the property as it does here.
Upon such suggested premise the County says that it is not really taxing the property but the airline's "leasehold advantage" in what it has measured as the difference in fair market rent of such "property" and what the airline is actually paying as rent under its leases. The county calls this "a private commercial advantage". We are not aware of any statutory basis for assessing a tax upon a taxpayer's bargain, certainly not an ad valorem tax. This argument is advanced by the county for the proposition that even though the property involved may be immune or exempt as outlined above, nevertheless, the leasehold interests of private corporations in such properties represent separate and distinct property interests subject to taxation. The only authority cited for this resourceful and novel approach is Walden but that holding involved taxation of the leaseholds themselves (not the difference in market value thereof to the lessee). The mere use of the words in that opinion of "leasehold interests" does not support the taxation of some bargain advantage in the use of the lease.
By virtue of our holdings, there is no need to reach the other contentions raised by the parties.
Accordingly, the final judgment is
Affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
Pan American World Airways, Inc., brought suit in the Circuit Court of Dade County challenging the legality of the 1970 ad valorem tax assessment of its leasehold interests at Miami International Airport. The parties agreed to a stipulation of facts and both sides moved for summary judgment. The trial court granted plaintiff's motion for summary judgment, declared the 1970 ad valorem tax assessment against plaintiff's leasehold interests invalid; and enjoined defendants from collecting 1970 ad valorem taxes. Appeal was originally filed in the District Court of Appeal and then transferred to this Court since construction of the Constitution was involved below.
The facts, as stipulated to by the parties, are that plaintiff-appellee is a commercial airline and defendants-appellants are Dade County and the Board of County Commissioners acting as the Dade County Port Authority. The Port Authority controls, maintains and operates the Miami International Airport; all of the real property, both improved and unimproved, located within and upon the airport is owned by Dade County.
The Airline, in connection with its profit-making venture, leases from the County certain of the airport property and maintains on the leased premises an operations and aircraft overhaul base, an airline terminal facility, executive reservations and accounting offices and a flight simulator building and warehouses. The Airline's leasehold interests in the real property involved were placed on the Dade County real property assessment roll and assessed for taxation by the County in the aggregate amount of $14,866,490.00, indicating a tax liability of $299,336.78.
The construction of certain of the buildings leased by the Airline and the improvements or additions to certain other leased buildings were financed through the issuance and sale of revenue bonds. Revenue bond financing of buildings leased by the *514 plaintiff, Pan American Airlines, totalled $7,032,863.71. As of the relevant taxing date, January 1, 1970, the principal amount of the revenue bonds had been reduced to a total balance of $6,485,000.00 by virtue of rental payments made by the Airline, which payments were directly applied to retire the bonded indebtedness. The County has assessed all of the Airline's leasehold interests in both the revenue bond properties and the nonrevenue bond properties.
The Airline's leasehold interests in the revenue bond properties were created by leases (leases #4 and #5), containing the following provision:
"No rentals, fees, licenses, excise or operating taxes, tolls or other charges except those expressly provided in this Supplemental Agreement, and charges for utilities mentioned in the Lease Agreement, shall be charges by the Authority against or collected from, directly or indirectly, Pan American for any of the facilities, rights, licenses and privileges granted by this Supplemental Agreement. It is expressly understood and agreed that the Authority shall, if not prohibited by law, assume and pay any and all taxes or improvement charges of any nature whatsoever which may be levied or assessed against the New Facilities, or the leasehold interest of Pan American therein."
Leases on the other properties contain the following provision:
"The Authority agrees that no rents, fees, charges or tolls, other than those expressly provided in this Lease, shall be charged or collected by it from Lessee or from Lessee's employees, suppliers of materials or furnishers of service for the use of any of the premises, facilities, licenses and privileges expressed in or reasonably inferred from these presents or for any of the services required to be performed hereunder by the Authority, the rents, fees, and charges expressly provided herein being full and complete consideration and compensation to Lessor for the use of said premises, facilities, licenses and privileges and the performance of said services."
The Airline contends that by virtue of the foregoing provisions in its various leases, the leasehold interests owned by it may not be taxed, either by the County or by any State agencies such as the Board of Public Instruction, Central and Southern Flood Control District, or by the Florida Inland Navigation District. Alternatively, the Airline contends that if any ad valorem taxes are assessed against its leasehold interests, the County has agreed to pay, and is liable for, all such taxes.
The County contends that the leasehold interests in question are subject to ad valorem taxation for the 1970 tax year by virtue of Article VII, § 10 of the Florida Constitution, which became effective January 7, 1969. Article VII, § 10, provides in pertinent part as follows:
"Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
* * * * * *
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated *515 by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." (e.s.)
The Airline contends, and the trial court held, that the foregoing provision of the Constitution requires implementation by the Legislature before it can become effective. I disagree. The people of the State have adopted a constitutional provision which, in its plain meaning, treats privately held leasehold interests in bond financed projects as private property for the purpose of taxation. The provision that such interests "shall be subject to taxation to the same extent as other privately owned property" is straightforward and only requires that the taxing authorities treat such property as all other private properties under the presently existing system of taxation.[1]
The property taxed in the instant case is not the land and buildings owned by the county, but rather the privately held leasehold interests of the Airline. It is the leasehold interests that have been valued for taxation. The value of the underlying lands and buildings[2] is not included in the assessment. The actual dollar valuation of the various leasehold interests involved is not an issue. No problems of double taxation are present.
It is also important to recognize that the concept of "public purpose" justifying the issuance of revenue bonds, does not in itself require exemption from taxation. All projects financed by the issuance and sale by public bodies of bonds must serve some public purpose. The rule is that incidental benefit to private interests does not invalidate bonds issued for a predominantly public purpose.[3] The construction, operation and maintenance of airports has been recognized as a valid public purpose justifying the issuance of bonds.[4] Airlines provide a recognized public service which justifies leases such as those in the instant case between the County and the Airline and the use of public financing for the facilities used by airlines.[5]
Another section of the Florida Constitution which merits consideration is Article VII, § 3(a), providing in part:
"All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation."
The foregoing is the only constitutionally recognized exemption which could arguably *516 apply in the instant case. However, since it is the privately owned leasehold interests, rather than the County owned land and improvements, which are sought to be taxed, § 3(a) of Article VII does not apply.
Exemptions from taxation must be authorized by the Constitution[6] and are strictly construed against the party claiming exemption.[7] Statutory exemptions such as those of Florida Statutes § 196.25,[8] in effect at the time of the assessments in the instant case, cannot be construed to exceed constitutional authorization. Section 196.25, formerly § 196.62, provides in pertinent part as follows:
"(1) Any real or personal property which for any reason is exempt or immune from taxation but is being used, occupied, owned, controlled or possessed, directly or indirectly by a person, firm, corporation, partnership or other organization in connection with a profit making venture, whether such use, occupation, ownership, control or possession is by lease, loan, contract of sale, option to purchase or in any wise made available to or used by such person, firm, corporation, partnership or organization, shall be assessed and taxed to the same extent and in the same manner as other real or personal property.
"(2) This section shall not apply to property described in subsection (1) when:
"* * *
"(c) The property is owned or used by the state, any county, municipality, or public entity or authority created by statute and is leased or otherwise made available to such person, firm, corporation, partnership or organization by such public body for a consideration in the performance by the public body of a public function or public purpose authorized by law, or which property prior to the effective date of this section was leased for valuable consideration for purposes not otherwise exempt hereunder; ... ."
The foregoing statute must be read as modified by the pertinent provisions of the Constitution of Florida as revised in 1968. Only as so construed can those portions of the statute not already held invalid in Hillsborough County Aviation Authority v. Walden[9] be sustained.
Decisions cited by the appellee and the various amici curiae in their briefs which recognize exemptions or immunity from taxation under the law as it existed prior to January 7, 1969, the effective date of § 10(c) of Article VII of the Florida Constitution, are not controlling of the question *517 before us.[10] The adoption of the constitutional provision expressly authorizing taxation of private leasehold interests in airport facilities financed by revenue bonds supersedes any prior decision to the contrary.
The Airline contends that even if its leasehold interests are not exempt from taxation under the constitution and statute, these interests are exempt, or in the alternative the county itself is liable for any taxes assessed, by virtue of the lease provisions set out, supra. The leases generally provide that no rentals, fees, licenses, excise or operating taxes, tolls or other charges, other than those provided for in the agreement, shall be charged or collected by the Lessor. Some of the leases involved also contain the provision that "the Authority shall, if not prohibited by law, assume and pay any and all taxes ... which may be levied or assessed against ... the leasehold interests of Pan American therein." (e.s.)
There are two basic reasons why the lease provisions do not constitute a covenant not to tax: First, there is no authority given under the Special Act[11] creating the Port Authority to enter into a covenant not to tax. Power to exempt from taxation is not to be inferred from a general grant of power to do all acts and make all contracts necessary[12] to conduct, acquire, establish, improve and maintain airport facilities. Second, covenants not to tax must be expressly stated and are strictly construed against the party claiming the exemption.[13] The provision in the leases prohibiting "rentals, fees, licenses, excise or operating taxes, tolls or other charges," is not a covenant exempting the leasehold interests from ad valorem taxation.
The provision found in some of the leases for payment by the Port Authority of any taxes assessed against the leasehold interests purports to be a covenant to pay taxes and is clearly ultra vires and outside the power of the Port Authority. That the parties themselves realized the questionable nature of this provision is evidenced by language of the agreement that "the Authority shall, if not prohibited by law, assume and pay any and all taxes... ."
The Airline's contention that its leasehold interests, if taxable, are only taxable as intangible personal property, is without merit.[14] Nor is the assessment limited under the Constitution to that portion of the total of the leasehold interests which were financed by revenue bonds still outstanding. The last sentence of Article VII, § 10, provides:
"If any project so financed, [revenue bonds] or any part thereof, is occupied or operated by any private corporation ... pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." (Emphasis supplied.)
*518 To recapitulate, I conclude that:
1. Prior to the effect of Article VII, § 10 of the Florida Constitution, the Legislature had not granted any tax exemption to the privately held airline leasehold interests in the Miami International Airport. Furthermore, the case of City of Naples v. Conboy (Fla. 1965), 182 So.2d 412, expressly holds no such tax exemption can be the subject of public contract; nor can the power be delegated by the Legislature to municipal officials to enter into a tax exemption contract, because it would be contrary to Sections 1 and 5, Art. IX of the 1885 Constitution (text 416).
In point of law, no court has authority to grant a tax exemption in the absence of an authorizing statute or constitutional provision.
2. Neither Section 196.25(2)(c), F.S. 1969, nor the successor statutes, Sections 196.012(5) and 196.199(2)(a), (3), F.S. 1971, F.S.A, by their terms contemplate tax exemption of Pan American World Airways' operations and aircraft overhaul facilities, its terminal facilities, executive reservations, accounting offices, a flight simulator building and warehouses. No more than are railroad and bus terminal facilities are these airline facilities exempt under the statute. To be exempt the leased facilities must have been "made available ... for a consideration in the performance by the public body of a public function or public purpose authorized by law," F.S. Section 196.25(2)(c), F.S.A. The operation of private commercial aircraft is not the performance of a public function authorized by law. At any rate, a tax exemption is strictly construed against claimant.
3. Subsequent to the effectiveness of Article VII, § 10 of the Florida Constitution (January 7, 1969), no authority exists in the Legislature to even provide such tax exemption. That provision expressly provides "the property interest created by such ... lease [airport property leases] shall be subject to taxation the same as other privately owned property." Therefore, even such property, e.g., as the Bartkes Restaurant Service in the old Tampa Airport, would not be subject to tax exemption and the Legislature is now powerless to grant such an exemption.
4. The majority of the Court is quite mistaken in giving the impression private leasehold interests in public property have only been taxable since the Legislature so provided in 1961. This impression is contrary to the rationale of Bancroft Inv. Corp. v. City of Jacksonville (Fla. 1946), 157 Fla. 546, 27 So.2d 162, and the cases cited in Hillsborough County Aviation Authority v. Walden, supra, text 195 of 210 So.2d. Such interests have always been a species of property subject to taxation in Florida by virtue of the constitution itself.
5. There is much confusion in the majority holding and a sub silentio departure from taxation precedents which will give trouble. The Court seems to be saying that because a public airport qualified for public bond financing and serves a predominantly public transportation purpose, it follows the private airline leaseholds on the airport properties essential to commercial aviation likewise serve a public purpose and therefore are exempt from taxes. This is indeed a far-reaching, court-generated tax exemption discriminatory to other taxpayers without benefit of specific statutory or constitutional authority. The constitutional provision cited above is directly to the contrary.
6. The majority opinion is contrary to the state policy against public officials granting tax exemptions as heretofore recognized in case law, which policy is now emphasized in the 1968 Constitution. Not since the ill-advised and long expired 15-year constitutional tax exemption (Section 12, Article IX, Amendment to the 1885 Constitution, adopted in 1930) of certain industrial plants, has an innovation as far-reaching as the one expressed in the majority opinion been seriously considered in Florida.
NOTES
[1] Fla. Const. art. XVII, § 4 (1885).
[2] Fla. Stat. § 193.481, F.S.A. (oil, mineral & other subsurface rights); Fla. Stat. § 711.08, F.S.A., and Fla. Stat. § 711.19, F.S.A. (condominiums); and others.
[3] Fla. Stat. § 192.62 subsequently reenacted verbatim in Fla. Stat. § 196.25, F.S.A. The statute followed our holding that absent some law such leaseholds were not taxable. Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571 (Fla. 1957).
[4] Bancroft Inv. Corp. v. City of Jacksonville, 157 Fla. 546, 27 So.2d 162 (1946); See also, City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965).
[5] State v. Board of Control, 66 So.2d 209 (Fla. 1953); State v. Daytona Beach Racing & Recreational Facilities District, 89 So.2d 34 (Fla. 1956); Panama City v. State, 93 So.2d 608 (Fla. 1957).
[6] State v. Dade County, 157 Fla. 859, 27 So.2d 283 (1946).
[7] This legislative declaration has been judicially approved by this Court. State v. Okaloosa County Airport and Industrial Authority, 168 So.2d 745 (Fla. 1964). Also see Fla. Stat. § 196.012(5) for definition of "public purpose," effective December 31, 1971.
[8] Section 196.25 was repealed in 1971 and covered in a completely new Chapter 71-133, with exemptions being expressly included in present § 196.199, eff. 12-31-71. Subsection (2)(c) provides an express exemption from tax where there has been a covenant not to tax, as sub judice.
[9] A careful review of these constitutional provisions discloses that the 1968 provision refers to "municipal or public purposes" and that the 1885 provision mentions "municipal purposes" only. For purposes of this litigation, we hold, as we have on many similar occasions that "public purposes" and "municipal purposes" are synonymous. Daytona Beach Racing & Recreational Fac. Dist. v. Paul, 179 So.2d 349 (Fla. 1965); Gwin v. City of Tallahassee, 132 So.2d 273 (Fla. 1961).
[10] See Daytona Beach Racing & Rec. Fac. Dist. v. Paul, 179 So.2d 349 (Fla. 1965); and relevant cases cited therein.
[1] Gray v. Bryant, 125 So.2d 846, 851 (Fla. 1960): "The will of the people is paramount in determining whether a constitutional provision is self-executing and the modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people."
[2] Appellants, in their brief, state: "The land has not been taxed; nor has any improvement been taxed. What the tax assessor did was to assess only the private proprietary advantage accruing to the plaintiff by virtue of its contract or lease rental at a figure below economic rent. In other words, the difference between the January 1, 1970, fair market rent and the actual rent paid was a private commercial advantage that wholly accrued to Pan American. It is the value of this leasehold advantage  not the value of the lands and buildings  which was taxed." (Emphasis theirs)
[3] Gwin v. City of Tallahassee, 132 So.2d 273, 277 (Fla. 1961); Panama City v. State, 93 So.2d 608, 614 (Fla. 1957).
[4] State v. Dade County, 157 Fla. 859, 27 So.2d 283 (Fla. 1946).
[5] State v. County of Dade, 210 So.2d 200 (Fla. 1968); Burton v. Dade County, 166 So.2d 445 (1964), recognizing that "Dade County Port Authority" is merely a name given Board of County Commissioners and is not an independent political subdivision.
[6] Sparkman v. State, 58 So.2d 431 (Fla. 1952); L. Maxey, Inc. v. Federal Land Bank, 111 Fla. 116, 150 So. 248, 250 (1933): "Undoubtedly the Legislature is without power to provide for exempting from taxation any class of property which the Constitution itself makes no provision for exempting. The principle has been more than once affirmed in this state that the Constitution must be construed as a limitation upon the power of the Legislature to provide for the exemption from taxation of any classes of property except those particularly mentioned classes specified in the organic law itself."
[7] Wedgeworth Farms, Inc. v. Thompson, 101 So.2d 381, 386 (Fla. 1958): "While a taxing statute is always construed liberally in favor of the taxpayer and against the tax collector, we must remember that exemptions and special benefits to particular taxpayers that remove them from the more burdensome requirements applicable to others are construed strictly against the exemption."
[8] Fla. Stat. § 196.25 was repealed by Laws 1971, c. 71-133, § 15, effective December 31, 1971.
[9] 210 So.2d 193, 196 (Fla. 1968): "We agree with the Circuit Court that insofar as F.S. Section 192.62(2)(c), F.S.A. [later numbered 196.25(2)(c)] was deemed by the Aviation Authority to apply to and continue the exemption to properties covered by leases executed prior to the enactment of Section 192.62(2) (c), it is unconstitutional."
[10] See, e.g., City of Opa-Locka v. Metropolitan Dade County, 247 So.2d 755 (Fla. App.1st 1971), wherein it was held that the County could not assess and collect taxes on private leasehold interests at the Opa-Locka Airport for the years 1966, 1967 and 1968. Section 10(c) of Article VII of the Constitution was not involved in that decision.
[11] Chapter 22963, Laws of Florida, 1945.
[12] Chapter 22963, Laws of Florida, 1945, § 2(10): "(10) To make and enter into all contracts and agreements and to do and perform all acts and deeds necessary and incidental to the performance of its duties and the exercise of its powers;"
[13] 51 Am.Jur.Taxation § 512; Compare ordinance held invalid in City of Naples v. Conboy, 182 So.2d 412 (Fla. 1965).
[14] Hillsborough County Aviation Authority v. Walden, 210 So.2d 193, 195 (Fla. 1968): "The Court finds, however, that the leasehold interest of the Defendant Tampa Airport Motel, Inc., is a separate, distinct interest in such property and may be assessed and taxed as real estate to the lessee, Tampa Airport Motel, Inc., which is using such property for a predominantly private purpose."

See, S.R.D. v. White, 148 So.2d 32 (Fla.App.2d 1962), cert. discharged, 161 So.2d 828 (Fla. 1964).